OPINION *Page 2 
{¶ 1} Appellants Robert L. Swank and E. Clark Swank ("Appellants") appeal the decision of the Richland County Common Pleas Court to grant the motion for summary judgment of Appellee Agri Mark Farmers Co-Op, Inc., nka Town Country Co-Op, Inc. This is the second appeal in a lengthy legal battle between the parties.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Freeman Swank, Sr., (now deceased), and his wife, Rheabelle Swank ("Swanks") are the parents of Appellants and Freeman Swank, Jr. ("Freeman").
 {¶ 3} In the 1950's, the Swanks acquired several farm properties between Bellville and Butler, Ohio. Such property was at all times titled solely in the parents' names. The farming operation consisted of dairy cattle, raising livestock (cattle and hogs) and crops. Appellants worked on the farms and resided there. Freeman was not employed on the farms except during high school and short periods thereafter.
 {¶ 4} The operation of the farms caused the Swanks to incur significant debt. In the early 1990's, the Swanks obtained financing with Agri Mark for the purpose of providing dairy feed for their dairy operation. Agri Mark obtained a UCC security interest in the dairy cattle, crops, fixtures, farm equipment, farm machinery, farm product, livestock and similar after-acquired property.
 {¶ 5} The Swanks were unable to make their payments and Agri Mark filed suit against the Swanks (Case No. 1995 CV 0144 D). On October 10, 1995, Agri Mark was granted judgment in the amount of $63,466.65, plus interest at a rate of 24% per annum from October 31, 1994. Agri Mark then filed a certificate of judgment *Page 3 
with the Richland County Clerk of Courts on October 26, 1995. At the time of the filing, the value of the lien was $77,844.17 plus interest.
 {¶ 6} On April 19, 1996, Appellant Robert Swank filed a complaint for declaratory judgment in Richland County Common Pleas Court against Freeman Swank, Rheabelle Swank, Bank One and Agri Mark Farmer Co-Op (Case No. 96-254-H). The complaint alleged that in 1986, Appellant Robert Swank entered into a separate purchase/lease agreement for Holstein dairy cattle from R and J Leasing Company. The Swanks signed the agreements as guarantors for security of payment. Thereafter, the Swanks entered into aforementioned financial agreements with Bank One and Agri Mark wherein the financial institutions were granted a security interest in the same dairy cattle. As to Agri Mark, Appellant Robert Swank alleged in Count III of the complaint that Agri Mark may claim an interest in the cattle based upon the October 26, 1995, judgment lien.
 {¶ 7} The Swanks auctioned farm equipment and the contested dairy cattle on April 30 and May 1, 1996. Subsequently, counsel for the Swanks contacted Agri Mark and offered to pay Agri Mark $65,000 in exchange for full satisfaction of the judgment lien. The Swanks further requested that Agri Mark assign the judgment lien to Freeman, rather than release it. On June 20, 1996, Agri Mark was paid $65,000 drawn on the personal checking account of the Swanks. The parties entered into an Assignment of Judgment Lien on July 24, 1996.
 {¶ 8} On November 5, 1996, the trial court held a pre-trial in which some of the parties apparently agreed to escrow the funds from the sale of the disputed dairy cattle. Agri Mark states that it was not a party to this escrow agreement. On May 19, *Page 4 
1997, the trial court issued a judgment entry memorializing the escrow agreement of the November 5, 1996 pre-trial. On July 2, 1997, Appellants filed a motion to show cause as to why the Swanks should not be held in contempt for failing to comply with the May 19, 1997 judgment entry. The trial court granted the motion on July 18, 1997.
 {¶ 9} Appellants filed a separate lawsuit under Case No. 97-CV-11-H on January 3, 1997. In that suit, Appellants asserted that they expected to share in an inheritance of the farms along with their brother, Freeman, pursuant to promises made constituting an oral partnership and other claims. Appellants also claimed interference with their expectancy of inheritance by Freeman, unjust enrichment and other assertions.
 {¶ 10} On October 8, 1997, the trial court consolidated all of the pending cases related to the Swanks and the farm dispute under Case No. 96-254-H and assigned the matter to a visiting judge.[1]
 {¶ 11} On March 14, 2002, Appellant E. Clark Swank, filed a motion to intervene under Case No. 96-254-H. Appellants also filed a motion to supplement the 96-254-H complaint. In their supplement, Appellants brought additional claims against Bank One and Agri Mark. In Count V of the supplement, Appellants alleged that accepting payment from the Swanks to settle the outstanding judgment lien and *Page 5 
the assignment of the judgment lien by Agri Mark to Freeman were fraudulent transfers pursuant to the Uniform Fraudulent Transfer Act, R.C. 1336.01 et seq. Appellants requested compensatory damages, punitive damages and attorney fees against Agri Mark.
 {¶ 12} The trial court set the matter for trial and ordered that the trial of the issues in Case No. 97-CV-11-H be bifurcated. The trial court ordered that it would determine Appellants' equitable interests. After Phase I, the trial court determined that an equitable partnership interest in the farms had not been created, but it did find that the parties had created an oral contractual interest in the farm. Judgment Entry, Nov. 11, 2004.
 {¶ 13} The parties appealed the trial court's decision to this Court. In Swank v. Swank, 5th Dist. No 2004CA 0110, 0111, 0112, 2005-Ohio-5524, we found that an oral agreement relating to Appellants' expectations to share in the inheritance of the farms was an unenforceable contract to make a will. We reversed the decision of the trial court and remanded the matter to the trial court for further proceedings.
 {¶ 14} On May 2, 2007, Agri Mark moved for summary judgment. The trial court granted Agri Mark's motion for summary judgment on June 28, 2007, finding that Agri Mark had no interest in the contested dairy cattle and the assignment of the lien did not constitute a fraudulent transfer pursuant to R.C. 1336.01, et seq. Within its judgment entry granting the motion for summary judgment, the trial court also granted Appellant E. Clark Swank's motion to intervene and Appellants' motion to supplement the complaint, pending since March 18, 2002. The trial court included in *Page 6 
its entry the language from Civ. R. 54(B), making the decision a final, appealable order.
 {¶ 15} It is from this decision that Appellants now appeal.
 {¶ 16} Appellants raise a single Assignment of Error:
 {¶ 17} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE MOTION OF DEFENDANT AGRI MARK FARMERS CO-OP, INC., FOR SUMMARY JUDGMENT."
 I. {¶ 18} Appellants argue the trial court erred when it granted Agri Mark's motion for summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The WeddingParty, Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212.
 {¶ 19} Civ. R. 56(C) states, in pertinent part:
 {¶ 20} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being *Page 7 
entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 21} Pursuant to the above-stated rule, a trial court may not grant summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claim. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Vahila v.Hall (1997), 77 Ohio St.3d 421, 429 citing Dresher v. Burt (1966),75 Ohio St.3d 280.
 {¶ 22} The first matter this Court must determine is what issues were before the trial court pursuant to Appellants' original and supplemental complaints and Agri Mark's corresponding motion for summary judgment. On April 19, 1996, Appellant Robert Swank filed his complaint for declaratory judgment against Agri Mark asking *Page 8 
for a declaration of Agri Mark's possible interest in the farm's dairy cattle. Appellants then filed a motion for E. Clark Swank to intervene in the original action and a motion to supplement the complaint to add an additional claim against Agri Mark, Count V as stated above. Agri Mark filed its motion for summary judgment on May 2, 2007, and while the trial court had not yet granted Appellants' motion to intervene and motion to supplement the complaint, Agri Mark argued the issues found within Count V as if the trial court had granted the motions. The trial court then granted the motions to intervene and supplement the complaint in its judgment entry granting Agri Mark's motion for summary judgment.
 {¶ 23} Agri Mark argued before the trial court, and the trial court so found, that Agri Mark was entitled to judgment as a matter of law on Appellants' original complaint for declaratory judgment and on Count V of Appellants' supplemental complaint. The trial court accepted Agri Marks' arguments that Appellants presented no genuine issues of material fact to establish that a fraudulent transfer had occurred between Agri Mark, the Swanks and Freeman.
 {¶ 24} Now before this Court, in arguing the trial court erred in granting Agri Mark's motion for summary judgment, Appellants assert that genuine issues of material facts exist in regards to Appellants'three claims raised in Count V of their supplemental complaint against Agri Mark. Appellants state their three claims are: (1) wrongful receipt of proceeds, (2) fraudulent transfer and (3) civil conspiracy. Agri Mark argues Appellants are impermissibly raising the claims of wrongful receipt of proceeds and civil conspiracy for the first time on appeal. We note that in Appellants' memorandum in opposition to Agri Mark's motion for summary judgment, Appellants *Page 9 
did not raise the claims of wrongful receipt of proceeds or civil conspiracy to the trial court.
 {¶ 25} When reviewing Count V of the supplemental complaint, we recognize that the Ohio Rules of Civil Procedure require "notice" pleading rather than "fact" pleading. Iacono v. Anderson ConcreteCorp. (1975), 42 Ohio St.2d 88, 92, 326 N.E.2d 267; Salamon v. TaftBroadcasting Co. (1984), 16 Ohio App.3d 336, 338, 475 N.E.2d 1292. Pursuant to Civ. R. 8(A) and 8(E), "notice pleading" simply requires that a claim or defense concisely set forth only those operative facts sufficient to give "fair notice of the nature of the action." Devore v.Mutual of Omaha Insurance Co. (1972), 32 Ohio App.2d 36, 38,288 N.E.2d 202. A pleader is ordinarily not required to allege in the complaint every fact he or she intends to prove. State ex rel. Neff v.Corrigan, 75 Ohio St.3d at 549, 661 N.E.2d at 381.
 {¶ 26} Upon reviewing Count V of the supplemental complaint under the guidelines of notice pleading, we find that Count V only sets forth the allegations of fraudulent transfer pursuant to R.C. 1336.01 et seq. Appellants' claim for "wrongful receipt of proceeds" (which this Court will interpret to mean "conversion") is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. Gen. Motors Corp. (1990), 49 Ohio St.3d 93,96, 551 N.E.2d 172. "Civil conspiracy" is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Kenty v.Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 419,650 N.E.2d 863, 866. The allegations in Count V are specific as to the allegation of *Page 10 
fraudulent transfer, but too vague to be permissible under notice pleading to sufficiently put the parties on notice that Appellants are also claiming conversion and civil conspiracy against Agri Mark.
 {¶ 27} It is well established that a reviewing court will not consider issues which are raised for the first time on appeal and which were not brought to the attention of the trial court. Sellers v. Bunnell HillDevelopment Co. (August 13, 1990), Warren App. No. CA89-11-069. Appellants' claims for wrongful receipt of proceeds and civil conspiracy are not properly before this court for our review. As such, we will only review this matter as it applies to Appellants' original claim for declaratory judgment and supplemental claim of fraudulent transfer pursuant to the Uniform Fraudulent Transfer Act.
 {¶ 28} Agri Mark moved for summary judgment on Appellants' request for declaratory judgment and on Count V of Appellants' complaint. In its judgment entry granting Agri Mark's motion for summary judgment, the trial court first found Agri Mark was entitled to judgment as a matter of law on Appellants' complaint for declaratory judgment. As stated above, Appellants' original claim against Agri Mark was a request for a declaration of Appellants' interest in certain dairy cattle that Agri Mark may have also claimed an interest in pursuant to its October 26, 1995 judgment lien.
 {¶ 29} Agri Mark admits that before June 20, 1996, it did claim an interest in the dairy cattle owned by the Swanks. Agri Mark entered into a financing agreement with the Swanks where Agri Mark supplied dairy feed and other supplies to the Swanks in exchange for a security interest in the dairy cattle, crops, fixtures, farm equipment, farm machinery, farm products, livestock and personal property. The *Page 11 
Swanks defaulted on their financing agreement; Agri Mark brought a suit on account and was granted judgment in the amount of $63,466.65, plus interest at a rate of 24% per annum from October 31, 1994. Agri Mark then filed a certificate of judgment with the Richland County Clerk of Courts on October 26, 1995.
 {¶ 30} On June 20, 1996, however, Agri Mark's interest in the dairy cattle was extinguished. On that day, Agri Mark accepted payment from the Swanks to settle the outstanding judgment lien. The debt to Agri Mark was satisfied and Agri Mark therefore no longer had any interest in the dairy cattle, the subject of Appellants' declaratory interest action. Based upon this factual scenario, we find Appellants can present no genuine issues of material fact to establish their claims as to Agri Mark under the pending declaratory judgment action.
 {¶ 31} Appellants' supplemental claim against Agri Mark also alleges that Agri Mark fraudulently accepted payment from the Swanks on Agri Mark's outstanding judgment lien and that Agri Mark engaged in a fraudulent transfer when it then assigned the judgment lien to Freeman Swank, Jr. In its judgment entry granting Agri Mark's motion for summary judgment on these issues, the trial court found that Appellants could not meet the elements of fraudulent transfer and therefore Agri Mark was entitled to judgment as a matter of law.
 {¶ 32} R.C. 1336.04 allows a creditor to establish a claim for fraudulent transfer in two ways. First, R.C. 1336.04(A)(1) requires a showing that the debtor had an actual intent to commit fraud in the transfer of an asset. It states:
 {¶ 33} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer *Page 12 
was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 34} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; * * *"
 {¶ 35} Appellants have the burden of proving, by clear and convincing evidence, the debtor's intent pursuant to R.C. 1336.04(A)(1). Blood v.Nofzinger, 162 Ohio App.3d 545, 2005-Ohio-3859, at ¶ 36. Direct evidence of fraudulent intent is not essential. Id. The creditor may establish a debtor's actual intent under R.C. 1336.04(A)(1) if the circumstances underlying the transfer demonstrate "badges of fraud," listed as follows:
 {¶ 36} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 37} "(1) Whether the transfer or obligation was to an insider;
 {¶ 38} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 39} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 40} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 41} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 42} "(6) Whether the debtor absconded;
 {¶ 43} "(7) Whether the debtor removed or concealed assets; *Page 13 
 {¶ 44} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 45} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 46} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 47} (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."
 {¶ 48} R.C. 1336.04(A)(2) permits claims for constructive fraud against future creditors. Aristocrat Lakewood Nursing Home v. Mayne
(1999), 133 Ohio App.3d 651, 667, 729 N.E.2d 768. Constructive fraud focuses on the effect of the transaction and may exist where the debtor had no actual intent to commit fraud. Id. A creditor may prove that constructive fraud occurs if the debtor did not give reasonably equivalent value in exchange for the transfer and if one of the following applies:
 {¶ 49} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 {¶ 50} "(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." R.C. 1336.04(A)(2).
 {¶ 51} Appellants' claims against Agri Mark under the theory of fraudulent transfer are based upon the allegation that Agri Mark acted as a co-conspirator with *Page 14 
the Swanks and Freeman to (1) accept payment to settle the judgment lien and (2) assign the judgment lien to Freeman. Appellants must rely upon the theory of civil conspiracy because Appellants have stated in their briefs, and we agree, Agri Mark is not a debtor to Appellants.
 {¶ 52} The claim of civil conspiracy, however, is not properly before this court. As such, we find as a first matter that Appellants have failed to establish any genuine issue of material fact that Agri Mark engaged in a fraudulent transfer pursuant to R.C. 1336.04 when Agri Mark accepted payment from the Swanks to settle the outstanding judgment lien. That transaction solely involved Agri Mark as creditor and the Swanks as debtor.
 {¶ 53} The issue that remains is whether Agri Mark engaged in a fraudulent transaction when it assigned the judgment lien to Freeman. As stated above, Agri Mark is not a debtor to Appellants. In addition, Appellants cannot rely upon their theory of civil conspiracy in this instance. Appellants attempt to argue that because of the specific factual scenario in this case, they have established that a genuine issue of material fact exists as to whether the parties engaged in a fraudulent transfer pursuant to the elements of R.C. 1336.04(A)(1) or (2). Specifically, Appellants argue that the Swanks as debtors received no consideration under R.C. 1336.04(B)(8) when Agri Mark assigned the lien to Freeman. Appellants also advance the same argument pursuant to R.C. 1336.04(A)(2).
 {¶ 54} We find Appellants' argument as to the alleged fraudulent assignment of the lien to Freeman must also fail because Agri Mark is not a debtor to Appellants and this court cannot consider the argument of civil conspiracy. The Swanks and *Page 15 
Freeman are named as defendants in the underlying case, but these parties are not before this Court in this specific appeal. Further, Appellants have presented no Civ. R. 56 evidence to establish a genuine issue of fact regarding the issue of consideration.
 {¶ 55} Accordingly, Appellants' sole Assignment of Error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.
 By: Delaney, J. Hoffman, P.J. and Farmer, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to Appellants.
[1] The cases consolidated under 96-254-H are: Case No. 96-278-H, a suit on account brought by Moorman Mfg. 5 Star, S.M.A; Case No. 96-501-D, a suit on account brought by Shelby Grain and Feed, Inc.; and Case No. 97-CV-11-H, Appellant's suit against the Swanks and Freeman. There is also a separate pending foreclosure action under Case No. 04-CV-606-H brought by First National Bank of Shelby. *Page 1